IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 1:20-cr-11 |
| | : | |
| EDWARD BAKER, III | : | |

## MOTION TO DISMISS

AND NOW, comes the defendant, Mr. Edward Baker, through his counsel, Assistant Federal Public Defender Gabrielle Lee, and respectfully moves the Court, pursuant to Federal Rules of Criminal Procedure 12(b)(3)(B), to dismiss the Count 3 of the Indictment, which charges possession of a firearm while being an unlawful user of marijuana, in violation of 18 U.S.C. § 922(g)(3). The statute is unconstitutional in light of the U.S. Supreme Court's ruling in *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022). The restriction contained in § 922(g)(3) prohibits possession of a firearm for any person "who is an unlawful user of or addicted to a controlled substance." Because the Government cannot demonstrate that prohibiting such conduct is consistent with the Nation's historical tradition of firearm regulation, this count must be dismissed.

This count must also be dismissed because § 922(g)(3) is unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment. The statute fails to give ordinary people fair notice of the conduct it punishes because it does not define the term "unlawful user."

## STATEMENT OF FACTS

On December 18, 2019, law enforcement executed a federal search warrant at Edward Baker's home. *See* Department of Homeland Security Investigation report attached as Exhibit A at 2. During the search, agents discovered a small amount of marijuana in a mason jar which was found in Mr. Baker's upstairs tv room. *Id.* at 4. Mr. Baker allegedly acknowledged that the marijuana was his and informed officers that he used it to treat his PTSD. *Id.* Mr. Baker was then instructed to destroy the marijuana by flushing it down the toilet. *Id.* No evidence of marijuana use was collected or retained.

On March 10, 2020, Edward Baker was indicted in a three-count indictment charging (1) receipt of material depicting the sexual exploitation of a minor, (2) possession of material depicting the sexual exploitation of a minor and (3) possession of a firearm by an unlawful user of a controlled substance. (ECF No. 1).

## LEGAL ARGUMENT

**I.  18 U.S.C. § 922(g)(3)'s prohibition on possession of a firearm by a person who is an unlawful user of a controlled substance impermissibly infringes on Mr. Baker's right to bear arms under the Second Amendment.[1]**

The Second Amendment to the United States Constitution "confer[s] an individual right to keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). This right "shall not be infringed." U.S. CONST. amend. II. The

---

[1] This legal issue is currently pending before the Third Circuit Court of Appeals in *United States v. Erik Harris*, No. 21-3031. The matter is fully briefed. Oral argument has not yet been scheduled.

right to keep and bear arms is fundamental, applicable against state and local governments, and entitled to the same protections as other fundamental rights enshrined in the Constitution. *See, McDonald v. City of Chicago*, Ill., 561 U.S. 742 (2010). Nevertheless, in 1986, Congress passed a law prohibiting the possession of firearms by unlawful users of controlled substances, a law that strips citizens of rights guaranteed to them by the Second Amendment without any historical precedent.

Following the U.S. Supreme Court's decision in *Heller*, most federal appellate courts, including the Third Circuit applied a two-step framework using a means-ends analysis to determine the constitutionality of § 922(g) restrictions on Second Amendment rights. *Binderup v. Att'y Gen.*, 836 F.3d 336, 346-47 (3d Cir. 2016). However, in *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court adopted a new standard for determining the constitutionality of regulation based on the Second Amendment. The Court stated:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with this Nation's historical tradition of firearm regulation.

*Id.* at 2129-30.

Therefore, a new test has been established. The first step in the Court's analysis is to determine whether the plain text of the Second Amendment covers a defendant's conduct. The burden then shifts to the government to demonstrate that

the regulation is consistent with the "Nation's historical tradition of firearm regulation." *Id.*

### A. The Second Amendment's plain text covers conduct at issue in § 922(g)(3).

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. For decades, the Second Amendment was understood by courts as setting forth a collective right tied to militia service. *See, e.g., Love v. Pepersack*, 47 F.3d 120, 124 (4th Cir. 1995). In *District of Columbia v. Heller*, the Supreme Court relied on text and history to recognize that the Second Amendment protects an individual's right to possess a firearm "unconnected with militia service." 554 U.S. 570, 582 (2008). The Court emphasized that the Second Amendment "codified a pre-existing right" to keep and bear arms, ensuring that the right "could not be infringed." *Id*. Thereafter, the Court clarified that the right to keep and bear arms for the core lawful purpose of self-defense is a fundamental right necessary to our system of ordered liberty. *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767, 778 (2010).

Section 922(g)(3) is a complete bar on firearm possession by a specific group, and that includes, barring possession for purposes of self-defense. A person's ability to possess a firearm for self-defense is the central component of the Second Amendment right. Thus, the conduct charged under this statute is clearly covered by the plain text of the Second Amendment. This aspect of the plain text analysis is generally undisputed.

Unlawful users of controlled substances are part of "the people" the Second Amendment refers to. The Supreme Court interpreted "the people" as "unambiguously refer[ing] to all members of the national community, not an unspecified subset." *Heller* at 580. *Heller* began with a "textual analysis" of the Second Amendment's "operative" clause, initially observing the phrase "the right of the people" also appears in the First and Fourth Amendments. *Id.* at 578, 579. Relying on its earlier construction of "the people" in the Fourth Amendment, the Court observed that "the people" is "a term of art." *Id.* (*quoting United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990)). Its uses suggest that "the people,"as used across the Bill of Rights as well as in the preamble, "refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Id.* at 579-81 (*quoting Verdugo-Urquidez*, 494 U.S. at 265). The phrase "the people" thus created "a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Id.* at 581. Indeed, *Bruen* cites *Heller* as directly stating, "[t]he Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions.'" *Bruen* at 2156. Edward Baker is a citizen of the United States, and thus clearly falls within the Second Amendment's protections.

## B. The government cannot meet its burden to show that § 922(g)(3)'s restrictions are consistent with the Nation's historical tradition of firearm regulation.

The burden next shifts to the government to demonstrate that 922(g)(3) is consistent with the Nation's historical tradition of firearm regulation. The inquiry at this stage is "fairly straightforward" when the challenged regulation addresses a "general societal problem that has persisted since the 18th century," because there "the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Bruen* at 2131. And "if earlier generations addressed the societal problem, but did so through material different means," that too is evidence that the a blanket bar on firearm possession to address the problem is unconstitutional. *Id*.

Here, the societal problem of the possession firearms by users of intoxicating substances is not new and was certainly present during the 18th century. Therefore, the government is required to produce historical examples of regulations that are "distinctly similar" to 922(g)(3). *See Bruen* at 2132–33. These examples do not exist.

The history of barring firearm possession by those who use or are addicted to controlled substances is limited and relatively recent. Section 922(g)(3) was enacted as part of the Gun Control Act of 1968. Pub.Law 90-618 (prohibiting one "who is an unlawful user of or addicted to marihuana or any depressant or stimulate" from ***shipping, transporting, or receiving*** in interstate commerce any firearm). This was the first time in the Nation's history that Congress enacted such a ban. The precursor to § 922(g)(3) did not even prohibit ***possession*** of firearms by such

6

persons. *See United States v. Carter*, 669 F.3d 411, 417-18 (4th Cir. 2012). It was not until 1986 that possession was added. *Id*. at 418.

The government cannot rely on the passage of a mid-twentieth century statute to establish a long-standing historical tradition dating back to the enactment of the Second Amendment. *See Bruen*, at 2137. In fact, the Supreme Court specifically declined to consider any twentieth century evidence offered by the respondents in *Bruen*, noting it "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Id*. at 2154, n. 28. A district court in the Western District of Oklahoma recently addressed this exact issue and found that the government was unable to identify any historical examples distinctly similar to 922(g)(3) and therefore, stripping an individual of his fundamental right to possess a firearm based solely on his status as a marijuana user, is not a constitutionally permissible means of disarming a member of "the people." *United States v. Harrison*, No. 22-328, ECF No. 36 (W.D. Ok., February 3, 2023).

Because the Government will not and cannot establish that § 922(g)(3) is consistent with the Nation's historical tradition of firearm regulation it violates the Second Amendment facially and as applied to Mr. Baker.

## II.   18 U.S.C. § 922(g)(3)'s prohibition on gun possession by anyone who is "an unlawful user of or addicted to any controlled substance" is unconstitutionally vague.[2]

Mr. Baker is charged under § 922(g)(3), which prohibits possession of a firearm by a person who is an "unlawful user of" a controlled substance. The statute does not define "unlawful user," and there is no objective legal or common definition for that term. 18 U.S.C. § 922(g) defines nine categories of persons prohibited from possessing firearms. Subsection (g)(3) is the *only* of § 922(g)'s nine categories where an individual's inclusion in the class is not ascertainable by reference to public or medical records and the only category that is mutable.

The Fifth Amendment Due Process Clause precludes the government from taking away a person's life, liberty, or property under a statute "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015); *Baptiste v. Attorney General*, 841 F.3d 601, 615 (3d Cir. 2016). The vagueness doctrine guarantees that ordinary people have "fair notice" of the conduct a statute proscribes in terms that are clear enough to follow and understand. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The prohibition on vague statutes also ensures "those enforcing the law do not act in an arbitrary or discriminatory manner." *FCC v. Fox Television Stations*, 567 U.S. 239, 253 (2012);

---

[2] This legal issue is currently pending before the Third Circuit Court of Appeals in *United States v. Erik Harris*, No. 21-3031. The matter is fully briefed. Oral argument has not yet been scheduled.

*see also Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (vague statutes "permit a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections").

The constitutional mandate that statutes be drafted for clarity also protects separation of powers: "Congress, rather than the executive or judicial branch, [must] define what conduct is sanctionable and what is not." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (internal citations omitted).

Each of the concerns that require vague statutes to be declared unconstitutional applies with greater force in the context of criminal statutes. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982). Indeed, the more significant the criminal sanction, the more searching a court's analysis must be. *See Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 46 (1991) (O'Connor, dissenting). "[P]erhaps the most important factor affecting the clarity" the Constitution demands is whether the law "threatens to inhibit the exercise of constitutionally protected rights." *Hoffman*, 455 U.S. at 499. Here, the law burdens the Second Amendment, and "a more stringent vagueness test should apply." *Id.*, 499.

### A. Section 922(g)(3) is facially void because the text of the statute is ambiguous.

The issue before this Court is whether 18 U.S.C. § 922(g)(3) is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015). The statute has two parts, criminalizing two aspects of

9

controlled-substance related behavior. The first, which is the provision at issue in this case, is persons who are unlawful users of controlled substances. 18 U.S.C. § 922(g)(3). The second, is persons who are addicted to controlled substances. *Id.*

The term "user" of any controlled substance is not defined by statute. While the existence of an undefined term alone does not render a statute vague, the ambiguity of this term does. The phrase "unlawful user" potentially covers a broad range of behavior and the conduct Congress intended to cover with the prohibition is unclear. *See e.g., United States v. Turnbull*, 349 F.3d 558, 561 (8th Cir. 2003) ("The term 'unlawful user' is not otherwise defined in the statute, but courts generally agree the law runs the risk of being unconstitutionally vague without a judicially-created temporal nexus between the gun possession and regular drug use.").

The dictionary simply defines the term as: "one who uses." *See* Miriam-Webster.com (2022) (definition of "user"). Section 922(g)(3), therefore, prohibits firearm possession by one who unlawfully "uses" a controlled substance, but does not clarify if there are any temporal constraints on when such use took place. Thus, on its face, the statute would prohibit anyone who has ever unlawfully used a controlled substance from possessing a firearm.

In an effort to create this temporal element and decrease inconsistent application of the statute, a number of circuit courts, including the Third Circuit have attempted to define "unlawful user"; however, the definitions and elements created by the circuits vary significantly, showing that even federal appellate courts

cannot agree who is and is not subject to punishment under this statute. According to the Third Circuit, "[t]o be an unlawful user, one needed to have engaged in regular use over a period of time proximate to or contemporaneous with the possession of the firearm." *United States v. Augustin*, 376 F.3d 135, 139 (3d Cir. 2004). If a defendant heads west to states covered by the Seventh Circuit, "[t]he prohibition in § 922(g)(3) bars only those persons who are current drug users from possessing a firearm … Thus the gun ban extends only so long as [the defendant] abuses drugs." *United States v. Yancey*, 621 F3d 681, 687 (7th Cir. 2010). Even further west, "[t]o sustain a conviction under § 922(g)(3), the government must prove that the defendant took drugs with regularity, over an extended period of time, and contemporaneously with his . . . possession of a firearm." *United States v. Purdy*, 264 F.3d 809, 812 (9th Cir. 2001).

By creating these definitions, the courts are essentially inserting words and elements and restrictions into the statute that were not authorized by Congress. Courts are attempting to rescue this undeniably vague statute by inserting a temporal element. *Turnbull*, 349 F.3d at 561. "A statute that is unconstitutionally vague cannot be saved…by judicial construction that writes in specific criteria that its text does not contain." *Skilling v. United States*, 561 U.S. 358, 416 (2010) (Scalia, concurring). Indeed, in *United States v. Herrera*, after the government conceded that "user" required regular use over an extended period of time the dissent noted the problem of this well: "But under our constitutional concepts of separation of powers, only Congress can define what constitutes 'regular use' and what

constitutes 'an extended period of time'; and neither the prosecutor nor the jury should be permitted to determine those matters on an ad hoc case by case basis." *United States v. Herrera*, 313 F.3d 882, 889 (5th Cir. 2002) (DeMoss, J., dissenting).

The plain language of the statute and judicially created definitions fail to provide an individual with notice of their status as an "unlawful user." This exact observation underscores the vagueness problem at the core of § 922(g)(3). Without comprehensible statutory definitions, it is unclear when a person begins, or ends, use of a controlled substance that prohibits possession of firearm. Unless one first knows their status as a prohibited person, they cannot knowingly commit a violation of § 922(g)(3). The constitutional infirmities of § 922(g)(3) are so grave they render the statute meaningless and unenforceable. Because the statutory language of § 922(g)(3) is so vague it fails to provide an ordinary person fair warning about what the law demands of them including whether they fall within a prohibited status under the statute, it must be found unconstitutionally vague.

### B. The statute is vague as-applied to Mr. Baker.

Section 922(g)(3) is unconstitutionally vague, as applied, because Mr. Baker did not have fair notice that he was a "user" and thus prohibited from possessing a firearm. Because Congress has not given the term "unlawful user" substantive meaning, Mr. Baker could not have understood that he potentially fell within § 922 (g)(3)'s prohibited class based on the language of the statute alone.

Looking next to the definition created by the Third Circuit and considering the government's potentially admissible evidence, Mr. Baker's history does not

establish that he is one who engages in "regular use" in unlawful use of a controlled substance "over a period of time proximate to or contemporaneous" with his possession of a firearm. Mr. Baker does not have a demonstrable criminal history of regular use of any controlled substance. There is no evidence that he has ever received treatment for drug use. At the time of his arrest he did not demonstrate any signs of being under the influence of a controlled substance. There is no physical evidence at all, because according to the report in this case, it was destroyed at the time of the search. The only evidence of this offense is Mr. Baker's alleged statement that he uses marijuana to treat PTSD. The facts are insufficient to establish that Mr. Baker was an unlawful user of a controlled substance as defined by the Courts, including the Third Circuit. Even with the Circuit's judicially created definition, § 922(g)(3) remained so vague it failed to give Mr. Baker fair notice that he fell within the statue's prohibited class, and any enforcement of the statute against Mr. Baker was arbitrary.

Moreover, following the Supreme Court's decision in *Rehaif v. United States*, 139 S.Ct. 2191, 2194 (2019), the government must now not only show that the defendant knew he possessed a firearm "but also that he knew he had the relevant status when he possessed it." Writing for a seven-Justice majority, Justice Breyer's opinion in *Rehaif* attends carefully to the intimate relationship between mental state and criminal culpability, "what Blackstone called 'a vicious will.'" *See Id.* at 2195-2197 (citing 4 W. Blackstone, Commentaries on the Laws of England 21 (1769)). By requiring the defendant to have knowledge that he falls within the

status of an unlawful user of a controlled substance, *Rehaif* enhances the notice requirement and the need for clearly defined categories.

Section 922(g)(3) is both facially vague and vague as-applied.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Edward Baker respectfully submits that Count III of the indictment must be dismissed with prejudice.

Respectfully submitted,

*/s/ Gabrielle Lee*
Gabrielle Lee
Assistant Federal Public Defender